## GREGORY v. STATE.

No. 17273. Opinion Filed Aug. 2, 1927.

(Syllabus.)

**1. Appeal and Error—Questions of Fact—Conclusiveness of Verdict.**

The jurors are the sole judges of the weight and credibility of the various witnesses, and their decision on all questions of fact will not be disturbed by this court unless it is shown that they are in error as to some decision of fact, and this error must be clearly pointed out.

**2. Appeal and Error—Record—Showing of Rejected Evidence.**

Where a party complains of the rejection of evidence, he must show in the record the substance of what the evidence would have been in order that this court may determine whether any material errors were committed.

**3. Judgment Sustained.**

The court has examined the evidence in this case, and finds that the same supports the verdict and judgment.

Commissioners' Opinion, Division No. 2.

Error from County Court, Washington County; T. H. Reeve, Jr., Judge

Action by the State against O. S. Gregory to compel the defendant to maintain and support an illegitimate child under chapter 70, art. 3, C. O. S. 1921. Judgment for the State, and defendant appeals. Affirmed.

J. R. Charlton, for plaintiff in error.

The Attorney General, for defendant in error.

BENNETT, C. A civil action brought in the county court of Washington county, Okla., wherein the state of Oklahoma was plaintiff and O. S. Gregory was defendant. On November 20, 1924, a complaint was filed

in said court, charging the defendant, Gregory, with being the father of a bastard child born September 15, 1924, in said county and state, to one Bessie Myers, the complaining witness herein. The defendant was arrested upon a warrant issued out of said court, arraigned, and gave bond for his appearance, and thereafter entered his plea of not guilty. On September 8, 1925, said cause was tried in said court to a jury, which, by its verdict, found the defendant Gregory guilty as charged in the complaint. The judgment of the court was to the effect that the defendant should pay the sum of $30 per month for the maintenance, cost, and expenses of the nurture, keep and support of the said child, $50 for expenses incident to birth, and the costs of the action, and make bond for performance, from which judgment the cause is lodged here for review.

The parties will be referred to as they appeared below. The defendant's motion for new trial contains five specific grounds, but the argument in his brief is confined to two propositions: First, it seems to be contended that the evidence is insufficient and so contradictory as to furnish no proper basis for the verdict; and, second, the refusal of the court to admit certain testimony alleged to be competent, and by the exclusion of which the defendant was alleged to have been prejudiced.

In order that we may understand and pass upon these contentions, it is necessary that we should detail some of the facts. Bessie Myers, the complaining witness, a 17-year old school girl, living with a widowed mother at Dewey, Okla., met the defendant in July, 1923 The defendant was the owner of an automobile, and visited at the Myers home several times from July, 1923, to January, 1924, and took the complaining witness out riding on the roads thereabout, usually at night. Some time about October, sexual intercourse was indulged in between the two on the road out east of the town of Dewey, the exact date not being fixed, and there were two or three other acts about the same place and under the same circumstances before the beginning of the year 1924. One of the acts was about the 15th or 20th of December, 1923, and probably one in January The complaining witness says that she remembers the time because she had been to church in Dewey, and that she was one of those engaged in the exercise which took place there about 6 to 7:30 o'clock p. m., and that afterwards she went riding with Gregory. She met Gregory after the church service at the Owl Drug Store, and together er with a girl friend went to her home in the car and from there she went out driving alone with the consent of her mother. She testifies that she became pregnant and that the defendant is the father of her child. She did not talk with her mother about her condition, but she did speak about it to one Frank Rhodes, an officer. This was in April, 1924. The child was born in September, 1924, and she has taken care of it and maintained it since its birth. She says she was out at the place where the intercourse took place three nights with Gregory; that he would stop his car near the same place and drive out and stop on the side of the road.

Attention of the complaining witness was called by cross-examination to testimony as shown on page 59 of the record, where she says that she had intercourse with the defendant the first time on the 27th of December. She says that she told the county attorney that she first had intercourse with the defendant in October, and further that it is true that the first time was in October, but she says that she was not paying attention to the particular question being asked her. The record shows that the child was born September 15, 1924.

Complaining witness on cross-examination testified that she was not with any other men during October, November and December, 1923, or in January, 1924, but that she knew both Verne Taylor and Raymond Davis, both of whom were later called as witnesses for the defendant. Lucy Myers, mother of the complaining witness, testified that Bessie did not keep any other company during October, November, and December, 1923. The defendant contends that because prosecutrix denied being with other men during these months from October to January, it was important for him to show that she was with other men during that time, as this period covered the time when she alleges she became pregnant, and for that purpose the defendant introduced Verne Taylor, who testified that he had known prosecutrix "slightly" for about two years. This witness was then asked if he had been with Bessie during the months of November and December, 1923, away from her home. An objection to this question was interposed as incompetent, irrelevant and immaterial, and the court sustained the objection. Raymond Davis and three other witnesses were then called for defendant, and substantially the same questions were asked them, objections to which were likewise sustained.

There was considerable testimony on the part of the state tending to show the association of those parties at the home of the prosecuting witness and of her going driving with the defendant.

Frank Rhodes, a deputy sheriff, was examined, and testified as to having arrested Gregory at some place out of town and talked with the defendant and took him down to the Myers home. The direct examination of Bessie Myers at the preliminary before W. L. Woodroof, justice of the peace, in and for Bartlesville, Washington county, Okla., was introduced by the defendant. This sets out in very much greater detail the actual circumstances attending the acts of sexual intercourse, and she fixes the date of intercourse at December 27th, but later she said that she had had intercourse with him before, the first time in October, and that she had never had intercourse with any other man; that she was born in 1907 about 2½ miles north of Dewey, Okla. She says she had intercourse with him perhaps six times, but does not know the number of times, but always when she was out riding with him.

O. S. Gregory, defendant, says that he is 26 years old, an electrician, works at the cement plant at Dewey, Okla., and has been working there five years; knows the prosecuting witness; met her in July, 1923; after that was not in her company often, but occasionally; did not have intercourse with her in October, November, December or January; was not with her in November, December or January; was never with her except twice, and those times were in July; never took her out on the road east of Joe Knight's place, and never had intercourse with her on that road; that he has been out there but not with her; that he did not have intercourse with her on the 27th of December, 1923; that he was at his home, that is, at Mrs. Phillips, and that he calls that home. He testified that after he learned that he was accused of the parentage of the child, he left the vicinity and stayed away and does not know how long. He says that he tried to have the matter settled after he found that he was charged with bastardy. There is other evidence tending to show that the defendant was not at the Myers home in December. The medical man examined in the case said that it was a perfectly normal pregnancy, and the appearance of the child and mother appeared to indicate that the regular period of gestation should be calculated at about 280 days.

Upon a very careful consideration of the evidence in this cause, and a computation of the time within which she must have conceived, if her evidence is to be believed, it appears logical that the act of intercourse resulting in the conception must have been on or very near the date on which she fixes one of the acts of intercourse with the defendant. There were two witnesses to the act, the young mother testifying that she had this intercourse with the defendant about the 15th of December, and the defendant as stoutly denying the same. We have his statement that he associated with her, took her driving, and the statement of her mother and the members of the family to the effect that he came to the house several times during the fall and in the early winter in cold weather, and as against this the denial of the defendant. This raised an issue of fact to be tried by a jury after hearing and observing the witnesses, and they have passed upon it. There is abundant evidence to support their findings. It was not such an issue as had to be established beyond a reasonable doubt; a preponderance of the evidence was sufficient. See the case of Powelson v. State. 69 Okla. 72, 169 Pac. 1093.

"The jurors are the sole judges of the weight and credibility of the various witnesses, and their decision of a question of fact will not be disturbed by this court unless it is shown that they are in error as to such decision of fact, and this error must be clearly pointed out." Dixon v. State, 88 Okla. 172, 212 Pac. 600.

The evidence discloses no act of intercourse or indiscretion between Bessie Myers and any other man than the defendant, Gregory. It is true that her evidence with respect to dates is somewhat hazy. This is a very natural condition among those of her age, but her lack of clearness is certainly not such as to be remarkable.

We find, therefore, that the evidence sustains the verdict and judgment.

The second contention is based upon the refusal of the court to permit Verne Taylor, Raymond Davis, Earl Burnett, Art Kimble, and Ben Mayberry to testify that they themselves kept company with the prosecutrix about the time or a little before the time of intercourse, which must have resulted in conception, or that they saw other men with her at said time. Verne Taylor testified that he knew the prosecutrix "slightly"; Raymond Davis that he knew her not very well—had been with her at times. Earl Burnett testified that he had

known her four or five years and knew her during the months of October, November and December, 1923, and knew her in a general way. Art Kimble said that he was acquainted with her and had known her slightly about four years, and Ben Mayberry admitted that he knew her when he saw her for some years. Upon objection by the state, the defendant's witnesses, when asked by counsel for defendant, were not permitted to say whether or not they had kept company with the prosecutrix during the months of November and December, 1923, and upon like objection defendant's witness Mayberry was not permitted to say whether or not he had seen prosecutrix in the company of witness Davis during the months of November and December, 1923, and the refusal of the court in each instance to permit the witnesses to answer the questions thus propounded constitutes the defendant's second ground of complaint. From a careful perusal of the entire record it will be discovered that no offer was made by profert to show what the answers of these witnesses would have been to the questions asked had they been permitted to answer, and in this connection counsel for defendant at pages 12 and 13 of his brief says:

"We had a right to show that she had been with other men during the period that she claimed she had sexual intercourse with this defendant, and that we were entitled to go further, which we would have done, had we been permitted by the court, and show that she had had sexual intercourse with other men during the period that she claimed she was having sexual intercourse with the defendant, and during the period in which she denied that she had been with any other man."

There does not appear in the record any offer by profert of any evidence to show that prosecutrix in fact had sexual intercourse with any other man at the times indicated. It is the rule in this state that courts cannot speculate upon what answers might have been given by defendant's witnesses as to whether or not they had kept company with the prosecutrix at the times involved, and since no offer was made to show what these answers would have been, or to show that the prosecutrix had committed acts of intercourse with others than the defendant, this assignment of error is unavailable to the defendant, and the same cannot be urged successfully to reverse this case Cheeves v. State, 18 Okla. Cr. 480, 196 Pac 726.

"Where a party complains of the rejection of evidence, he must show in the record the substance of what the evidence would

have been, in order that this court may determine whether material errors were committed." Gross et al. v. Lincoln et al., 81 Okla. 87, 196 Pac. 960.

We hold that the court did not err in refusing to permit the witnesses to answer the questions propounded.

"At the trial of a bastardy process, the complainant on her cross-examination as a witness denied that she rode or walked with certain men about the time when the child was begotten. Held, that the defendant had no ground of exception to the exclusion of evidence thereupon offered by him to prove that she did ride and walk with them about that time, without proof of any other facts tending to show criminal intercourse." Maloney v. Piper, 105 Mass. 233. See, also, Douglas v. State, 134 Wis. 627, 114 N. W. 1121; Haverstick v. State, 6 Ind. App. 595, 32 N. E. 785.

Under the cases above cited, therefore, this last assignment of error is likewise without merit.

It is our opinion that the defendant had a fair and impartial trial. The jury had the opportunity to see the witnesses and pass upon the weight of their testimony, and since they have done so, and since we hold that there is sufficient evidence to support their verdict, their finding becomes binding upon this court, by reason of which we hold that the judgment of the trial court should be and the same is affirmed, and it is so ordered.

DIFFENDAFFER, HERR, JEFFREY, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. pp. 843, 844, §2830; 7 C. J. p. 998, §137; 38 Cyc. pp. 1516, 1518, 1521; 2 R. C. L. p. 193; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 73. (2) 4 C. J. p. 74, §1662. (3) 7 C. J. p. 1011, §170.