## HARRISS-IRBY COTTON CO. v. DUNCAN.

No. 4873.   Opinion Filed December 21, 1915.

Rehearing Denied May 23, 1916.

(157 Pac. 746.)

1.   **WITNESSES—Impeachment—Contradictory Statements—Collateral Issues.**   The test as to whether a particular contradictory statement of a witness is admissible for the purpose of impeachment is, Could the contradictory statement be introduced for any purpose in the trial independent of the contradiction? If it could be so introduced, then it is admissible for the purpose of impeaching the witness; otherwise it would be upon a collateral issue and not admissible.

2.   **MASTER AND SERVANT—Injuries to Servant—Assumption of Risk—Violation of Statute.**   The defense of assumption of risk, where it is directly contractual in the sense applicable to intention and voluntary continuance of labor under conditions dangerous and fully comprehended, and under such conduct as is equivalent to an agreement by the employee to relieve the employer from duty which otherwise rests on him, is not available where it violates a positive statute of the state.

3.   **INFANTS—Personal Injuries to Child—Right of Recovery.**   The father informs his minor son that he must do for himself, and permits him to remain away from home for more than a year, earning wages for himself, and while thus employed the son suffers personal injuries, and notifies his father, but receives no reply nor offer of assistance, and the father does no act indicating an intent to assert any claim to the earnings of the son. **Held,** in an action brought by the son through his next friend, that he is entitled to recover, as part of the detriment suffered, loss due to the impairment of his earning capacity from the date of the injury to his arrival at majority.

4.   **MASTER AND SERVANT—Injuries to Servant—Actions—Questions for Jury.**   Whether the failure of the employer to comply with a positive statute of the state relating to the safety of the employee was the proximate cause of an employee's injury is a question of fact for the jury.

5.   **APPEAL AND ERROR—Review—Prejudicial Effect of Error.**   By virtue of section 6005, Rev. Laws 1910, a judgment of a trial court will not be reversed or set aside where an examination of

the entire record discloses that the errors complained of are based upon nondirection or misdirection of the jury, improper admission or rejection of evidence, or error in matters of pleading or procedure, and that the parties have had a fair and impartial trial according to the forms of law, and no miscarriage of justice has resulted nor has any constitutional or statutory right of the party complaining been substantially violated.

(Syllabus by McKeown, C.)

*Error from Superior Court, Oklahoma County; Edward Dewes Oldfield, Judge.*

Action by Will Duncan, by his next friend, L. A. Wiseman, against the Harriss-Irby Cotton Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Ledbetter, Stuart & Bell,* for plaintiff in error.

*V. E. McInnis,* for defendant in error.

Opinion by McKEOWN, C. The plaintiff, Will Duncan, by his next friend, L. A. Wiseman, commenced this action in the superior court of Oklahoma county against the plaintiff in error, Harriss-Irby Cotton Company, to recover damages for injuries sustained to his right hand in a gin owned and operated by the plaintiff in error, located at Geary, Okla. The cause was tried to a jury upon the issues as joined, and upon a verdict and judgment in favor of the plaintiff the defendant appealed to this court. The parties will be referred to in the opinion as plaintiff and defendant as they appeared in the court below.

There was evidence to show that the plaintiff was a boy 16 years of age at the time of his injuries, on the 29th day of January, 1912, and that for ten days prior thereto he had been employed to run the gin stand upon which he was injured. For four or five months prior to the time

he was put in charge of the gin stand he had been em-
ployed by the defendant to work at the press, which was
located near the gin stand. The gin at which he was at
work at the time of the injury was a 70-saw Pratt double
breast gin. It was disclosed that L. A. Wiseman, the next
friend and brother-in-law of the plaintiff, had been em-
ployed by the defendant to go in company with its me-
chanic, Hughes, to this gin plant at Geary to put the same
in good condition prior to the time the season opened in
September. The mechanism employed to stop the gins
when in motion was what was denominated as an "idler
pulley," which, when pushed in proper position, would
stop the gin stand from running. It appears that the
idler in use at the gin stand where plaintiff was injured
was ineffective to stop the gin, on account of the bent
being too short, and had been in this condition since the
cotton season had opened some five months prior thereto;
that a short distance from the gin stand was a rope at-
tached to a whistle with which to notify the engi-
neer to stop the machinery. When the whistle was
blown the engineer would stop all of the gin stands, and
because of this the ginners in charge of the gin stands
would rarely blow this whistle when wanting to stop one
stand alone. It appears that at the time the plaintiff was
injured he was attempting to pull some cotton loose from
under the breast of the gin, and while doing so his hand
was caught in the saws of the gin and seriously injured.
No instructions of warning had been given him as to the
danger of loosening cotton that had clogged in such a
manner. The plaintiff testified that he had observed his
brother-in-law clean the gins, but had never seen him pull
the whistle so the engine would stop the machinery in
order to clean the gin. There was evidence that the plain-

tiff was reared in Texas, and that for more than a year prior to the injury had been away from his father, working and earning his wages for himself; that his mother was dead, and he left home on account of his stepmother, and came to L. A. Wiseman's, his brother-in-law and next friend, to live; that some time after he came he received a letter from his father (which had been lost at the time of the trial), telling him that, as he was away from home, he would have to do for himself the best he could, and that after his injury he wrote his father, but never received any reply.

The issues tendered by the pleadings were: First, that the negligence of the defendant which directly caused the plaintiff's injury was its failure to furnish belt shafts or other mechanical contrivances reasonably suitable, sufficient, or effective to stop the machinery of the gin whenever it was practicable to do so without affecting the efficient use of the machinery, in that on the particular gin stand upon which the plaintiff was at work when he was injured the belt was too short, and when the "idler" was raised it failed to stop the gin as it was intended to do, and that such condition had existed some four or five months prior to the time of the injury; second, that the defendant failed to warn and instruct the plaintiff as to the dangers incident to the work he was engaged in at the time of his injury—to which the defendant answered by way of a general denial and pleaded assumption of risk and contributory negligence as affirmative defenses.

The defendant first complains of the action of the trial court in refusing to permit one of its witnesses, named Whittington, to testify to certain statements made by Wiseman, the brother-in-law and next friend of the

plaintiff, in the absence of the plaintiff, and insists that said testimony was competent upon the ground: First, for the purpose of impeaching the witness Wiseman; and, second, for the purpose of showing what amount of instructions an ordinarily prudent man would have given the plaintiff. The witness Wiseman was asked on cross-examination:

"Q. I will ask you to state if it is not a fact that in Geary last January, before the plaintiff was put to work as ginner, you made an application to Mr. Whittington on one or more occasions to put the plaintiff to work as such ginner? A. I did not. Q. Is it not a fact that in Geary in last January, on one or more occasions, before plaintiff was put to work as a ginner, that you discussed with Mr. Whittington plaintiff's qualifications for filling the position of ginner? A. I told Mr. Whittington, in Geary, that I thought he would make a good ginner. Q. Is it not a fact last January at Geary, the question of getting another ginner came up; that Mr. Whittingon told you he wanted to get a man down from Watonga? A. Yes, sir; he asked me about getting a man from Watonga. Q. Did you not then get angry and tell him that if the man came, he would have to hunt a man to run the engine? A. No, sir. Q. You made no such statement at all? A. No, sir."

In its regular turn the defendant called the witness Whittington, and propounded to him the following question:

"Q. I will ask you to state whether or not when you mentioned the matter to Mr. Wiseman that you could bring a ginner down from Watonga to take his place what did he say?"

The objection of the plaintiff to the question was sustained.

"The defendant here offers to prove by this witness that on one of the occasions in January, 1912, when Mr. Wiseman was discussing the question with him as to who should take Wiseman's place as ginner, and while Wiseman was insisting that plaintiff should be employed to take Wiseman's place as ginner, the witness stated to Wiseman that defendant had a ginner at Watonga who was on the pay roll of defendant, and was not then being used in running the gin at Watonga on account of its being closed down, and that Wiseman got angry with witness for proposing to bring down the ginner from Watonga, and stated if he did bring him down, that he should only be an assistant to Will Duncan, the plaintiff, Wiseman stating again at that time that Will Duncan was thoroughly competent to run the gins of defendant at Geary, the plaintiff not being present."

If the questions were asked the witness Wiseman for the sole purpose of impeachment, then the test as to whether the court erred in its refusal to permit the witness to testify, in contradiction of the witness Wiseman in particular, is whether the defendant could have introduced the statements of Wiseman to Whittington for any purpose independent of the contradiction. Wigmore on Evidence, sec. 1003. Could the defendant have called the witness Whittington and introduced the alleged statement made by Wiseman, in the absence of the plaintiff? We think not. The circumstances of each case determine the admissibility of facts relative to some issues in the case, and no general principle can be laid down. Wigmore on Evidence, sec. 1021. If there had been an issue in the case involving the conduct of the witness Wiseman, then the testimony would have been admissible, and it would have been error to reject it. After a careful consideration of the facts and issues, we are of the opinion that the court was correct in its ruling.

There are several assignments of error based upon the giving of instructions to which defendant excepted, and the refusal of the trial court to give instructions requested by defendant, to which exceptions were duly saved. We have examined carefully all of the assignments of error urged to the giving of and to the refusal to give the instructions complained of by the defendant, and will set out in full only those instructions given or refused in so far as is necessary to pass upon all of the errors urged as grounds for reversal of the case.

The defendant complains of the failure of the court to give a concrete instruction upon the issue of assumption of risk, pleaded as a defense to the action. The instruction complained of reads as follows:

"You are instructed that when a servant enters the services of an employer, he assumes all risks which are ordinarily incident to the services in which he is engaged. But you are further charged that a servant does not assume the risks caused by the negligence of the master, if any, or by his failure, if any, to furnish devices for the purpose of throwing on or off the belts or of stopping the machinery as hereinbefore charged you.

"You are further charged that the burden of proof is upon the defendant to establish its defense on assumed risk. Now if you believe from the evidence that the plaintiff's injuries, if any, were received as the proximate result of the risk and dangers ordinarily incident to his said occupation, then you will find for the defendant."

The theory of the plaintiff was that the defendant was negligent in failing to comply with what is commonly known as the "Factory Act," in that defendant failed to provide a proper "belt shifter or proper mechanical contrivance for the purpose of throwing on or off

belts on pulleys whenever practicable." Comp. Laws 1909, sec. 4029; Rev. Laws 1910, sec. 3746. This statute is a declaration of the legislative policy of this state for the protection of those employed in and around dangerous machinery, and is one of the many statutes which have for their chief purpose the improvement of labor conditions. It was passed in the exercise of the police power as a humanitarian measure in the interest of the physical well-being of those who are employed where their lives and limbs are constantly in jeopardy from the machinery which it is necessary to use in changing raw products to the manufactured articles suitable for the use of mankind. In the early case of *Sans Bois Coal Co. v. Janeway,* 22 Okla. 425, 99 Pac. 153, this court adopted the law as announced in the case of *Narramore v. Cleveland, etc., Ry. Co.,* 96 Fed. 298, 37 C. C A. 499, 48 L. R. A. 68, to the effect that the servant does not assume the risk of dangers due to the failure of the master to comply with the laws relating to the safety of the servant. This court, speaking through the present Governor of the State of Oklahoma while a member of this court, in the well-considered case of *Curtis & Gartside Co. v. Pribyl,* 38 Okla. 511, 134 Pac. /1, 49 L. R. A. (N. S.) 471, expressly announced:

"Where a master or owner of a factory violates the law requiring 'belt shifters or other mechanical contrivances for the purpose of throwing on or off belts on pulleys whenever practicable' to be provided, and 'all machines' to be provided 'with loose pulleys   *   *   *   belting   *   *   *   and machinery of every description,' an employee, though working with knowledge of that violation, does not assume the risk of injury."

This court, speaking through Mr. Justice Turner in *Great Western Coal & Coke Co. v. Coffman,* 43 Okla. 404, 143 Pac. 30, says:

"As this is an action to recover damages resulting from the violation of a statute, * * * the servant, as a matter of law, cannot waive a compliance by the master therewith and assume the risk of the master's negligence in failing to comply with the statute. Hence the doctrine of assumption of risk was not available as a defense."

It necessarily follows that the defense of assumption of risk, where it is directly contractual in the sense applicable to intention and voluntary continuance of labor under conditions dangerous and fully comprehended, and under such conduct as is equivalent to an agreement by the employee to relieve the employer from duty which otherwise rests on him, is not available where it violates a positive statute of the state. To hold otherwise would permit persons by contract to abrogate the statutes of the state.

Defendant urges as error the giving of instruction No. 12, and the refusal of the court to give the defendant's requested instruction No. 2, on the ground that the trial court failed to instruct upon the issue of assumed risk. In the light of the evidence and the law governing such defense, the defendant has no just ground for complaint. The cases cited and relied upon by counsel for defense correctly state the law in regard to the necessity of trial courts instructing juries upon the issues, but we are of the opinion that the instruction given was fair to the defendant.

Error is urged in the giving of instruction No. 18:

"You are instructed that, although the parents of a minor are entitled to the earnings of the minor until he

becomes 21 years of age, still the father may emancipate the child by surrendering to him his rights whereby the father allows the child to receive for himself his earnings and forces the child to make his own living and allows him to contract for his services, and collect and use his own earnings, leaving the minor to act on his own responsibility with the same independence as though he had attained the age of 21 years. You are therefore to determine from the evidence whether or not the plaintiff had been emancipated prior to the time of the injuries alleged by him. If you believe from the evidence that the plaintiff's father prior to said time agreed with the plaintiff that the plaintiff should seek employment, contract for his services, and receive pay therefor, earning his own living and keeping all money earned by him free from the authority and control of his father, then you will find that the plaintiff in this case was emancipated."

It was incumbent upon the plaintiff to allege and to prove at the trial that he had been emancipated by his father. The plaintiff did this by testimony which was not contradicted by the defendant. The defendant urges that the emancipation as proven by the plaintiff was revocable by the father at any time before majority. It seems to be well settled that the emancipation may be for the whole of minority or for a shorter time, gratuitous or for a valuable consideration, and requires the assent of the child. Counsel for the defendant are correct in their claim that when emancipation is by parole, without consideration, it may be revoked, but in this connection it is also true that, like a gift or license without consideration may be revoked before it is accepted, so emancipation may be revoked before assented to and acted upon by the child, and where the child has accepted the emancipation and acted upon the same, there is no more reason to permit the parent to revoke the emancipation of the child than to

permit a donor to revoke a gift which has been accepted, unless where the welfare of the child would demand the revocation for the child's own good. It would appear that if the father permits the child to leave home, though not driven out by force or command but by the incoming of a stepmother, and thereby it becomes necessary for a child to make his own way, and he is afterwards written to by the father to do the best he can, and when injured the child writes the father and fails to receive any answer or assistance, it would indeed be a harsh and unnatural rule of law that would permit the father to appropriate the earnings of the child and sue for the loss of his earnings to his majority, because, forsooth, he might have the power to revoke the emancipation of the child. To announce such a doctrine in this state, which has taken such forward strides in the protection of children, would be to re-enact the ancient Roman law, which held children to be the property of the father, placing them in their relation to him in "the category of things instead of that of persons." No issue was raised or evidence offered that there had been a revocation by the father at any time prior to the trial, or any intimation that there would ever be a revocation at some future time. A mere possibility is not sufficient, of itself, to defeat the lad's right to recover on his own behalf, and we are of the opinion that the question was fairly submitted to the jury in the court's charge.

Counsel for defendant insist that it was error to submit the issue of negligence of defendant to the jury, for the reason that there was no evidence reasonably tending to support the issue. To this we cannot agree. The issues as to whether the defendant had violated the "Factory Act," and whether such violation was the proximate

cause of the plaintiff's injury, were questions of fact to go to the jury. Aside from these there was the issue as to whether the defendant was negligent in failing to instruct the plaintiff as to the danger of operating the gin stand. There was evidence supporting the plaintiff's contention, and the trial court was required to submit this issue to the jury. It is so well settled in this state that the trial court cannot take the issue of negligence from the jury, where fair-minded men might honestly draw different conclusions, as not to require the citation of authorities in support of same.

The defendant complains of the instructions of the court relative to the issues of contributory negligence and assumed risk, and urges that the plaintiff, even though not barred by the defense of assumed risk, was guilty of such contributory negligence as bars his right to recover. "Assumption of risk is a matter of contract. Contributory negligence is a matter of conduct." If plaintiff is to be defeated by the rule of assumed risk, his failure to recover on this ground rests on his implied agreement, made before the accident happened, that he would assume the very risk which caused his injury. On the other hand, if the plaintiff is barred from recovery on account of contributory negligence, it is because his conduct at the time of the injury was not, under the circumstances, that of an ordinarily prudent person. If the fact alone that plaintiff knew of the failure of the defendant to comply with the Factory Act is held as a matter of law to overcome the plaintiff's conduct at the time of the injury, then we have the novel situation of assumed risk taking the place of contributory negligence. Had the defendant complied with the Factory Act, and the plaintiff failed to keep the "idler belt" in proper condition, if it was his

duty so to do, and this contributed to or caused his injury, the plaintiff could not recover. This was a question of fact for the jury, and we are of the opinion that this issue was fairly submitted in the court's instructions.

Counsel for defendant are correct in their contention that the employer is not an insurer of the safety of his employee, and the employer is only required to use ordinary care to furnish a reasonably safe place to work and reasonably safe tools and appliances with which to work. However, upon a whole, the charge of the trial court fairly stated the law to the jury upon this issue, and there does not appear such error as to warrant a reversal of this case.

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which the application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." (Section 6005, Rev. Laws Okla. 1910.)

The refusal of the trial court to permit the defendant to amend its answer setting up the additional defense of fellow servant causing injury was not an abuse of judicial discretion. The offer to amend came after the evidence was in, just before the charge of the court to the jury. The defendant has no cause to complain at the action of the court in refusing the amendment.

We recommend that this case be affirmed.

By the Court: It is so ordered.