## HEARN v. BLAKENEY & AMBRISTER.

No. 19531. Opinion Filed Oct. 7, 1930.

Rehearing Denied Dec. 2, 1930.

Goode, Dierker & Goode, for plaintiff in error.

Blakeney & Ambrister, for defendants in error.

BENNETT, C. Blakeney & Ambrister, a firm of attorneys, filed this action in the district court of Seminole county, Okla., against G. W. Hearn and his wife, Lucy Hearn, to recover $12,500 attorneys' fees alleged to be due under an oral contract of employment entered into on or about March 30, 1927.

Plaintiffs' petition alleged that they were attorneys associated in the practice of law and that on March 30, 1927, defendants orally employed them to sue Barnsdall Oil Company for cancellation of a mineral lease on certain lands in which they were interested and orally agreed to pay plaintiffs as compensation 25 per cent. of all sums realized out of the suit or by settlement; that pursuant thereto plaintiffs filed suit against the oil company. That thereafter and without plaintiffs' knowledge defendants settled said suit and received about $50,000. Upon refusal of defendants to pay plaintiffs they demand judgment for $12,500.

For answer defendants filed a general denial. The court sustained a demurrer to the evidence as to Lucy Hearn and as to G. W. Hearn the cause was tried to a jury, who found for plaintiffs for $2,500, and G. W. Hearn appealed.

Plaintiffs' evidence tended to show that Blakeney & Ambrister were practicing lawyers with an office in Oklahoma City and that on March 30, 1927, G. W. Hearn, the defendant, C. O. Doss, E. R. Cosby, and P. E. Glenn came to plaintiffs' law office and discussed with them the bringing of an action to cancel a mineral lease held by Barnsdall Oil Company on certain lands in Pottawatomie county; that they said they desired to employ the same counsel; that they either owned or controlled the royalty under the lease. The conference lasted two hours; the legal questions involved were fully discussed; the validity of the lease covering about 125 acres was involved, but part of the acreage had been assigned to the Gypsy Oil Company, which had found production within the terms of the lease on its portion. On the remainder Barnsdall Oil Company had done some drilling resulting in the discovery of a small quantity of oil on the last day of the five-year term provided for in the lease.

The questions involved were, first, Was the whole lease extended by the production of oil on the part thereof assigned to the Gypsy Company? and, second, if not, Was the production by Barnsdall Company sufficient to extend the term of the lease beyond the five-year period?

That after a full discussion of the various phases of the controversy the question of compensation to plaintiffs was taken up and the elder member of the firm, Mr. Blakeney, was called in, and after the full facts were gone over with him, it was agreed that plaintiffs should receive for their services a contingent fee of 25 per cent. of all amounts recovered by suit or through settlement and $500 to cover all court costs and expenses involved whether in the trial or appellate court. Prompt legal action was urged and defendants desired that a member of plaintiffs' firm go immediately to Tulsa to demand a cancellation or to negotiate a settlement with the Barnsdall Oil Company. It was then agreed that letters should be written said company demanding relinquishment of the mineral lease in question. During the conference letters were written, signed by plaintiffs and mailed to said company, advising them that plaintiffs represented the various parties aforesaid, who were owners of or interested in the lands covered by said lease, that the lease had expired, and demanding a relinquishment. At the conference the value of a new lease was also discussed and it was agreed that if a settlement could be secured at $2,000 an acre, the same would be acceptable. A short time

after the conference Mr. Ambrister went to see the Barnsdall Oil Company at Tulsa to secure a release or effect a settlement, but was unsuccessful. That a few days later G. W. Hearn and Mr. Doss came to the office of plaintiffs, and when informed of the result of Mr. Ambrister's visit to Tulsa, Hearn said, "You go ahead and handle it and I will forget about it; it is in your hands"; and that Mr. Ambrister answered, "All right." Plaintiffs then instituted action in the district court of Seminole county to cancel the lease.

Soon after the filing of the petition plaintiffs applied for a receiver, but before the time fixed for hearing thereon arrived defendants removed the case to the federal court, whereupon plaintiffs filed a petition to remand the same to the state court, which application was later granted. At the time of the first conversation Hearn represented that his wife had an interest in the property and on that account she was made a party to the suit.

Later plaintiffs discovered that G. W. Hearn had dismissed the suit for cancellation and had made a settlement direct with the Barnsdall Oil Company, by the terms of which he executed to them a new lease covering the 25 acres on which the well was being drilled and perhaps other land of much less value from a mineral standpoint, in consideration of $20,000 cash and a certain overriding royalty interest of the value of $2,500 in an oil well already drilled. This settlement was never made known to plaintiffs by defendant Hearn. Plaintiffs' information came after the settlement through the oil company.

The evidence also showed that the said Hearn authorized an attorney who had represented him for years to draw up the dismissal of said action, which was turned over to the oil company at the time of the payment of the $20,000.

The petition in the cancellation suit was filed April 21, 1927. Hearn's settlement with the Barnsdall Company was made in May following. The vital part of all this evidence is given in detail by three witnesses, Hubert Ambrister, B. B. Blakeney, and C. O. Doss. The last-named witness indicated that he had had other business transactions with the defendant Hearn; that he was a friend of his and believed in him. He said, too, that he agreed at the same time to pay the plaintiffs 25 per cent. of the recovery for similar service and that he kept his contract. Further, that he saw G. W. Hearn almost every day and talked to him every time he saw him about the progress of the litigation.

The evidence on behalf of defendants is confined to the testimony of defendant G. W. Hearn. It is to the effect that he and Mr. Doss and Mr. Glenn went to plaintiffs' office March 30, 1927, to talk over with them the cancellation of the lease in question; that the original lease contained 125 acres, but that 40 acres had been sold off to the Gypsy, which left Barnsdall 85 acres; that witness frequently visited the office of Mr. Doss in Oklahoma City and that since the lease had about expired they began to talk about getting a renewal or making a new lease, as they did not think that enough oil to hold the lease had been found. Mr. Doss asked witness to get a photostatic copy of the lease at Wewoka and they might secure a release. When witness and the others went to plaintiffs' office the facts were explained to Mr. Ambrister and the question was then brought up as to how much he would charge if he were needed. That Mr. Ambrister stated he would have to see Mr. Blakeney, who was out of town, before fixing a fee, but that he would write letters to the oil company without charge and if they did not release or settle, a fee could be fixed later, but he stated that the fee would be about 25 per cent. Witness then left. Later a written contract was brought by Mr. Doss to witness while in the oil field, but he refused to sign it. Heard nothing more from Blakeney & Ambrister; does not think he ever saw Mr. Ambrister after that and did not know that suit had been filed.

In examining the evidence of defendant Hearn he denied repeatedly the employment of plaintiffs, but his evidence with respect to various other matters, such as his knowledge of the suit to cancel, his dismissal of that suit, the papers he signed in the settlement, is by no means direct, frank, and unequivocal, but there appears in the same a labored effort to evade, and the same is, on that account, not impressive. However, he does not deny specifically the testimony of Doss to the effect that he saw defendant Hearn almost every day and discussed with him the progress of the suit. The urgency of the suit to cancel and the amount involved make the statements of this party that he never saw the plaintiffs after the conference, knew nothing of the suit or its progress, that he did not dismiss the suit because he had no such suit, very hard to believe. The statement of his attorney who drew the dismissal at Hearn's direction is

indeed significant and the quick settlement of the pending lawsuit without notice to the attorneys of record who brought it is equally significant, and there is in the verdict of the jury nothing to cause surprise, unless, perhaps, it be the amount of the same, and since the plaintiffs do not complain, that requires no attention here.

Two propositions are presented for reversal: (1) The court erred in refusing to give defendant's requested instruction. (2) The court erred in excluding competent testimony offered by defendant. The special instruction is as follows:

"You are instructed that the defendant for his defense claims that there was no contract entered into, and that the transaction occurring on or about March 30, was merely a preliminary negotiation looking to entering into a contract, and that afterwards the contract was to be entered into, and that the only matter involved was the title to the royalty under 25 acres of land, whereas by its petition the plaintiffs claim the question concerned 125 acres of land. If you find that the transaction or occurrence testified about as taking place on or about March 30 was the agreement of the parties, and that nothing further in form of agreement was done, then your verdict should be for the plaintiffs, but in the event you find that a written contract was to be submitted to the parties, you must find that such written contract was actually executed before you can find for the plaintiffs, unless you find that the original negotiations constituted a complete contract."

Before consideration of this question it is important to determine the real vital issue in this lawsuit. That part of plaintiffs' petition which defines the issue reads as follows:

"Plaintiff alleges and says that the defendants, G. W. Hearn and Lucy Hearn, entered into an oral contract of employment with the plaintiff whereby the defendants employed the plaintiff to take such action as was necessary to cancel a lease and quiet their title against the Barnsdall Oil Company covering their interest in the following described lands in Seminole county, Oklahoma, to wit: (Description of land) and agreed to pay to the plaintiff as compensation for their services 25% of the value of the leasehold estate if said lease was canceled, or 25% of all sums received in settlement of said controversy, or 25% of all proceeds that might be realized out of said controversy."

To the petition a general denial was filed. The court instructed the jury, among other things, as follows:

"You are instructed that the burden of proof is upon the plaintiffs to show by a fair preponderance of the evidence each and every material allegation set out and contained in their petition.

"You are, therefore, instructed that if you find and believe from the evidence by a fair preponderance of the evidence that a contract was entered into between the plaintiffs and the defendant, on or about the 30th day of March, 1927, and that it was agreed by and between said plaintiffs and the defendant that the plaintiffs were to act as attorneys for said defendant, in a suit to be filed against the Barnsdall Oil Company and others, and that said plaintiffs did file such suit in keeping with said contract, provided you find said contract was made, and that it was agreed by and between the plaintiffs and the defendant that the defendant was to pay said plaintiffs for their services a sum equal to one-fourth or 25 per cent. of all sums recovered, and if you further find and believe by a fair preponderance of the evidence that after said suit was filed the defendant compromised said suit with the Barnsdall Oil Company, then, and in this event, it would be your duty to find for the plaintiffs in a sum equal to one-fourth of all moneys and property received by the defendant by reason of such compromise. If the plaintiffs have not established all these facts by a fair preponderance of the evidence, your verdict should be in favor of defendant."

The court then defined a contract and instructed the jury that they should consider all facts and circumstances to determine whether a contract was entered into.

It is clear that the only issue was: Were the plaintiffs employed orally by defendants to prosecute the action? Since the purpose of the alleged employment is undisputed, and since the petition alleges an oral employment and the answer puts that in issue and alleges no other form of employment, and since there is in the entire record no evidence indicating anything but an oral employment, and since there is no evidence whatever that any written contract of employment was ever contemplated by the parties at the time of the alleged employment, the inquiry is simply: Were the plaintiffs employed by defendants? If there was an employment, under all the proof it was on the 30th of March, for the parties did not negotiate at any other time or at any other place and nothing was then and there said about a contract in writing or written employment. The only other evidence of employment, or perhaps it might be called a recognition of employment, was a few days later when plaintiffs informed the defendant Hearn of the result of the visit to Tulsa, and thereupon said defendant, as

Mr. Ambrister testified, stated: "You go ahead and handle it and I will forget about it; it is in your hands," to which Mr. Ambrister responded, "All right," and then instituted the action to cancel the lease.

It is true that Mr. Ambrister later embodied the terms of the agreement in a paper writing which he sent to Hearn for his signature, but he did not sign the same. He had not agreed to sign the same. A written contract had not been brought to his attention in the negotiations; he was under no obligation to sign the same; it was not mentioned that their oral contract should be reduced to writing in a formal contract or forwarded to him for execution. Plaintiffs recognized that fact by proceeding without a more formal execution of the contract and carried out their part of same. Neither from defendant's pleading nor his proof does he intimate that the contract was conditioned upon its being reduced to writing and signed by the parties or that the said defendant so understood it. All his proof precludes the idea that there was a contract to reduce to writing. The evidence of Ambrister, Doss, and Blakeney is positive that no such agreement with reference to a written contract was mentioned in their negotiations. So that, in this requested instruction the words, "but in the event you find that a written contract was to be submitted to the parties you must find that such written contract was actually executed before you can find for the plaintiff," etc., submit a theory to the jury which was not in this case and could not be in it under the pleadings and the evidence. The same would only tend to confuse rather than to clarify the determinative issue.

Instructions to jurors are for the purpose of giving them in plain terms not only the theories of the parties, but a correct understanding of the vital issues. When twelve men go out to consider of their verdict their time for considering instructions is necessarily limited. Unless an instruction is couched in such terms as will readily disclose its meaning and purport and the issue involved, it becomes a hinderance rather than a help. We are satisfied that the instruction here tendered, while perhaps embodying a true statement of the law when carefully thought out, is, nevertheless, so erroneous as above indicated that we think a jury would be better equipped to pass upon the vital issue without than with it; and instead of enlightening, it would tend to confuse them, and we therefore hold that

it was not reversible error to refuse the same.

Defendant refers to the case of Adams v. Hazen (Va.) 96 S. E. 741; also the case of Brown v. Finney, 53 Pa. 373. We do not question these authorities, but the facts in the present case make them entirely inapplicable. Defendant also quotes as follows:

"It is elementary that, where it is a part of the understanding between the parties that the terms of their compact are to be reduced to writing and signed by the parties, the assent to its terms must be evidenced in the manner agreed upon, or it does not become a binding or completed contract.' Spinney v. Downing, 108 Cal. 666, 41 Pac. 797; Las Palmas, etc., Distillery v. Garrett, 167 Cal. 397, 139 Pac. 1077."

That is not authority here, for there was here no "understanding between the parties that their compact should be reduced to writing and signed by the parties." The authorities are good law, but they do not apply here. There was but a single issue here: Did the defendants employ the plaintiffs? There was no theory which could confuse the jury. Plaintiffs and their witnesses testified that there was such an unconditional employment. This is the evidence of three witnesses testifying in detail as to the circumstances. The defendant, on the other hand, testified alone and at every opportunity, whether pertinent to the inquiry or not, asserted that he did not employ plaintiffs. So it would seem improbable that the jury became confused as to the issue because the court did not instruct them that defendant contended that the talk or negotiations on March 30th between the parties was preliminary only.

The charge of the court was short, but we think sufficiently clear and to the point to advise the jury just what the issue was. There was but one theory of plaintiffs, to wit, that they were employed. There was but one theory of defendants, to wit, that plaintiffs were not employed. Under the instructions given the jury must have found that there was an oral contract by which the plaintiffs were employed, otherwise they would have found for the defendant.

It is next contended that the court excluded competent evidence offered by defendants. Defendant says that the exclusion of "Exhibit D" was reversible error. This exhibit was a written contract dated April 16, 1927, between E. R. Cosby and P. E. Glenn and Blakeney & Ambrister whereby the attorneys were employed to

cancel the same mineral lease and were to receive as compensation 10 per cent. of the first $20,000 recovered and 50 per cent. of all amounts in excess of $20,000 recovered. It is contended that this contract was competent to prove the falsity of Ambrister's denial of the existence of such a contract.

Our examination of the record discloses that Mr. Ambrister admitted executing "Exhibit D." and certainly it would not tend to impeach him to introduce the same to show that he actually executed what he said he executed. It is argued that it tends to impeach him when he testified that each of the parties, Glenn, Cosby, and Hearn, was to be charged 25 per cent. as attorneys' fee. Upon examining the record we find that Mr. Ambrister made the statement time and time again that he told Hearn that he would charge him 25 per cent. and that his contract with Hearn was 25 per cent. These questions were asked:

"Q. Will you answer my question? A. That was my contract. Q. That they were all to be charged 25%? A. Yes, sir."

—and also that it would impeach the witness when he said:

"Q. And he (Glenn) was not to get his services done for 10%? A. No, sir. Q. You didn't make any contract of that kind? A. No, sir."

Upon reading "Exhibit D" we find that it does not provide that the plaintiffs should perform the services for 10 per cent., and we might add that even if we assume that Blakeney & Ambrister agreed originally on March 30th to serve each of these parties for the same figure, there is nothing in the record which would seem to preclude them from making a later and different contract, if they so elected, with one or more of the parties with whom they dealt. No fraud is alleged, no misrepresentations by which a contract is sought to be set aside, nor is there any showing that the contract in "Exhibit D" providing for 10 per cent. of the first $20,000 and 50 per cent. of all in excess of that is a less valuable one to the attorneys than the one made on March 30, 1927, providing for 25 per cent. straight through.

A defense to the admission of this testimony might take another course. If Mr. Ambrister had denied the execution of "Exhibit D," it is not competent without some proof as to its execution. On the other hand, if he admitted its execution, then its introduction could not impeach but would corroborate him. We might add, too, that on its face this would seem to be a collateral matter, about which they seek to impeach the witness. The general rule is that where witness is questioned as to a collateral matter, his answer will be taken as conclusive. 40 Cyc. 2699. Here the defendant by his answer denied that he made any contract with plaintiffs. Would it be competent for him to show that plaintiffs had made a contract with some one else for the purpose of showing that he did not make a contract with defendant? The answer to this should be obvious. In the case of Harris-Irby Cotton Co. v. Duncan, 57 Okla. 761, 157 Pac. 746, the rule is stated as follows:

"The test as to whether a particular contradictory statement of a witness is admissible for the purpose of impeachment is: Could the contradictory statement be introduced for any purpose in the trial independent of the contradiction? If it could be so introduced, then it is admissible for the purpose of impeaching the witness; otherwise it would be upon a collateral issue and not admissible."

See, also, Weber v. Rusch, 117 Okla. 4, 245 Pac. 46, at page 48; Wigmore on Evidence, sec. 1003. Even if the evidence had been admitted, we think, under this record, it would not have changed the result.

It is contended, also, that the court committed error in refusing to permit the witness Hearn to testify as to conversations he had with P. E. Glenn when the latter presented a written attorney's contract to him for his signature. This was upon the ground that Glenn was agent of plaintiffs. Plaintiffs sent the contract to Glenn and asked him to have same signed by Hearn. Hearn offered to testify as to what he and Glenn said at the time the written contract was presented, but this, upon objection, the court excluded. There is no showing as to what the conversation would have been. It has been many times held that excluded testimony must be brought up in the record to make its exclusion available to the objecting party. Gregory v. State, 126 Okla. 117, 258 Pac. 902; Gross et al. v. Lincoln et al., 81 Okla. 87, 196 Pac. 960.

For the reasons given, the judgment is affirmed.

HERR, REID, LEACH, DIFFENDAFFER, and TEEHEE, Commissioners, concur.

By the Court: It is so ordered.