## TAYLOR v. HAYES.
### No. 35703.

Supreme Court of Oklahoma.

Sept. 29, 1953.

Q. D. Gibbs, Okmulgee, Rucker & Tabor, Ralph Thomas, Tulsa, for plaintiff in error.

Thomas E. Moore, Okmulgee, Young, Young & Young, Sapulpa, for defendant in error.

ARNOLD, Justice.

The plaintiff below recovered a judgment in the District Court of Okmulgee County for personal injuries allegedly sustained by reason of the negligence of defendant in failing to furnish a safe place in which to work.

In support of the allegations of his petition plaintiff's evidence reasonably tends to show that on September 24, 1950, he and one Earl Thornburgh, both painters by occupation, having heard that defendant had some painting to be done went to see her to obtain the job; that defendant wanted her house painted and discussed with them how much the cost would be; that defendant asked them what they charged, and whether they worked by the contract or by the hour; that they told her they worked for $1.25 per hour, or $10 per 8-hour day; that if she wanted it they would give her a contract; that defendant said she would furnish the paint and putty and would hire them by the hour; that they reported for work on September 25, 1950, shortly before 8:00 a. m.; that defendant had the paint set out for them and instructed them to putty the windows, to start at the highest place to work, to paint straight across from one section to another so as to leave no laps in the paint, to put paint cloths on the roof of the porch while painting the gables over the porch so that no paint would fall on her new roof and to do a nice job; that plaintiff and Thornburgh got their paint cloths which they had in their car and placed them on the roof of the porch, fastening them by nailing the cloths to the building at each side of the porch and fastening the cloths in the middle by ropes wound around a stick which was placed in an open window of the gable; that at about 10:00 a. m. defendant put her head out the upstairs window and instructed Thornburgh to take the canvases loose, paint where they had come together in the middle, and putty up the nail holes in the side of the house where they had been fastened because she did not want any nail holes in her house; that Thornburgh did as she directed; that plaintiff was not on the roof at this time and did not hear these directions of defendant; that Thornburgh did not tell plaintiff that he had loosened the canvas; that at about 3:00 p. m. plaintiff was on a six-foot stepladder which had been placed on the canvas, leaning against the gable of the house, and was painting the east end of the gable when the ladder slipped causing plaintiff to fall 5 or 6 feet from the side of the house onto the roof of the porch; that plaintiff landed on his stomach on top of the ladder; that the breath was knocked out of plaintiff and he got down to the ground; that he stayed on the ground 15 or 20 minutes; that plaintiff wanted to leave early but Thornburgh wanted to stay on and work until 5:00 p. m.; that Thornburgh drove plaintiff's car to their home at Beggs; that plaintiff was sick at his stomach and vomited on his way home; that the next morning plaintiff's face was swollen and he appeared sick; that he and plaintiff drove out to defendant's place but plaintiff was too sick to work and went back home; that Dr. Hindman was called to treat him; that the doctor found him quite ill, with evidence of an

acute intestinal obstruction, severe abdominal pains and vomiting; that plaintiff had consulted this doctor about a month before about having an abdominal post-operative hernia repaired and that the doctor had advised plaintiff he would have to lose weight before he would be a good operative risk and had placed plaintiff on a diet; that plaintiff had been to see him twice since and had lost 15 to 20 pounds; that when the doctor was called to see plaintiff on September 27th plaintiff gave him a history of having had a fall; that the doctor found plaintiff in such serious condition on September 27th that he immediately referred him to St. John's hospital in Tulsa for proper care and attention; that plaintiff was removed to this hospital and placed under the care of Dr. Perry; that there a diagnosis was made of an acute intestinal obstruction caused from adhesions which developed from an old post-operative hernia following an appendectomy; that plaintiff was treated in the hospital for ten days in an effort to relieve the obstruction without surgery but as the treatment was ineffective he was operated and the obstruction removed and the hernia repaired; that he was discharged from the hospital five days after the operation but continued to come back for post-operative care for some time; that plaintiff was instructed to do no heavy lifting and to wear an abdominal support; that if plaintiff sustained a fall such as he described it was possible that such fall aggravated the existing condition and contributed to the obstruction; that the fall possibly tore some of the existing adhesions, causing swelling, pain, and making additional obstruction of the intestinal tract; that plaintiff expended $554.10 in hospital and doctor bills; that prior to the fall plaintiff was able to do heavy lifting, roofing and painting work and had had no trouble with his hernia whatsoever in carrying on his occupation; that prior to the fall plaintiff made $10 per day and after the fall and the operation he was unable to do anything at all for 3½ months; that he had to wear an abdominal support for 9 months and was not able to work steadily during that time.

At the close of plaintiff's evidence defendant demurred and her demurrer was overruled.

Defendant testified that she told plaintiff and Thornburgh they could paint her house; that she asked them how much it would cost and they told her they would take it by contract or by the day; that it would likely cost her more by contract and suggested that they start painting by the day and she could see how fast they painted and that they could figure a contract later if she wanted it; that she gave them the paint and thinner and instructed them to start on the high gable but they suggested they start on the front of the house where it would show up better and she agreed; that she told them to paint lengthwise so there would be no lap where they left off from day to day; that she did not instruct Thornburgh to remove the fastenings of the canvas; that she did not know about the fall until Thornburgh told her about it about three weeks later; that thereafter she fired Thornburgh before the job was completed.

At the close of the evidence defendant moved for a directed verdict which was overruled and exceptions saved. The jury returned a verdict in favor of plaintiff in the amount of $2,000, itemized by the jury as follows: $554.10 hospital and surgical bills, and $1,445.90 nine months compensation and suffering. From order overruling motion for new trial defendant brings this appeal.

■ Although defendant made no objections to any instructions given by the court she alleges that the court committed fundamental error in refusing to give her requested instruction No. 1 defining the relationship of an independent contractor to his employer and the duty owed by an employer to an independent contractor. It is true that it is the duty of the trial court upon its own motion to instruct the jury upon all fundamental issues, Riser v. Herr, 187 Okl. 211, 102 P.2d 178. However, under the evidence above outlined and by defendant's own admissions it is clear that defendant told plaintiff how she wanted the house painted, the manner in which the brush strokes should be made, where to begin the

work, that she chose to pay plaintiff by the hour instead of on a contract price for the finished work, that she reserved the right to discharge plaintiff and his helper at her pleasure and that she exercised this right; that plaintiff and his helper were working solely for defendant; that she furnished the paint and other materials, plaintiff furnishing only his own brushes and ladders, which were the tools of his trade; that plaintiff worked under an oral, day-to-day arrangement. These facts clearly show that plaintiff was an employee of defendant, not an independent contractor. See Barnsdall Refining Co. v. State Industrial Commission, 163 Okl. 154, 21 P.2d 749; Ellis & Lewis, Inc. v. Trimble, 177 Okl. 5, 57 P.2d 244. Defendant was not entitled to an instruction on the status of an independent contractor and the court did not commit error in refusing to give defendant's requested instruction on the point.

■■ After all the evidence was in and just before the charge to the jury defendant requested permission to amend her answer to include the defense of fellow servant. Defendant contends that the refusal of such amendment is reversible error. Whether a party shall be allowed to amend pleadings is within the trial court's sound discretion and in the absence of abuse of discretion this court will not disturb the rulings of the trial court in refusing or permitting such amendments. Townsend v. Townsend, 174 Okl. 185, 50 P.2d 147. Defendant defended the case below on the theory that plaintiff was an independent contractor, not an employee and the defense of fellow servant can arise only where there is a master-servant relationship. We see no abuse of discretion in the action of the trial court. See Harriss-Irby Cotton Co. v. Duncan, 57 Okl. 761, 157 P. 746.

■ Defendant further contends that the verdict is contrary to the evidence and that excessive damages were given because the surgery which plaintiff underwent and the medical bills incident thereto as well as any loss of earnings during his convalescence and pain and suffering endured by him were necessitated by a condition which plaintiff had when he took the employment and were not the result of his alleged fall. Plaintiff's evidence shows that before his alleged fall, although he did have a hernia, he was able to do heavy manual labor and that immediately after the fall he became violently ill and had to have medical attention; that he was taken to the hospital where after other treatment to relieve the intestinal obstruction caused by adhesions which developed from the old post-operative hernia failed he was operated and the condition repaired; that it was the opinion of the attending surgeon that it was possible that plaintiff's fall aggravated the existing condition, possibly tearing some of the existing adhesions and making additional obstruction of the intestinal tract. On the question of damages the court instructed the jury that if it found that the injuries of which plaintiff complained were caused or contributed to by a hernia growing from an old appendectomy scar and not caused in the first instance by his fall from the ladder that plaintiff could not recover for his medical bills or other expenses, and in another instruction told the jury that if it found that any of the injuries claimed by plaintiff to have been caused by defendant's negligence existed prior to the date of the alleged accident it could not return a verdict for plaintiff. Under these instructions there inheres in the jury's verdict a finding that the operation and plaintiff's resulting loss of earnings, pain and suffering, and medical bills were necessitated by the fall which he sustained and that the fall was the result of defendant's negligence. The evidence above outlined is adequate to support such a finding and the verdict is not excessive.

Affirmed.

JOHNSON, V. C. J., and CORN, DAVISON, O'NEAL, and WILLIAMS, JJ., concur.