**Jerry D. SMITH, Plaintiff in Error,**
**v.**
**Nancy WILKINS, Defendant in Error.**
**No. 40692.**

Supreme Court of Oklahoma.

June 8, 1965.

A. C. Wallace, John R. Wallace, Melvin H. Landers, Ben T. Owens, Miami, for plaintiff in error.

H. G. E. Beauchamp, Nesbitt & Nesbitt, Miami, for defendant in error.

BERRY, Justice.

This is an appeal brought by Jerry D. Smith from a judgment rendered upon a jury verdict against him as defendant in an action brought by Nancy Wilkins, plaintiff in the trial court, to recover damages for personal injuries received in an automobile collision. The following matters, germane to consideration of the issues on appeal, are disclosed by the pleadings and the evidence.

The principal business thoroughfare in Commerce, Oklahoma, is Commerce Street, which runs east and west and is intersected

by River Street running north and south. Plaintiff was the owner and operator of the Commerce Help-Yourself Laundry which was located on a corner of the intersection of these streets. At approximately 1 p. m., July 31, 1962, plaintiff was traveling south on River Street. While proceeding through the intersection plaintiff's 1959 model automobile was struck about the left rear door by a car traveling west on Commerce Street, driven by defendant. As a result of the impact plaintiff's car was "knocked clear around", the front facing to the east and the rear end near the ditch on the south side of Commerce Street. Plaintiff was thrown around inside the car from the impact and suffered injury to her back, resulting in hospitalization, treatment and permanent disability according to medical evidence in her behalf. No issue is presented on appeal which requires consideration of the evidence relative to the injuries received. The action originally was brought against the minor defendant and his father, Ferman Smith. The jury returned a verdict only against the minor defendant.

Plaintiff alleged careful and prudent operation of her own car, and that after stopping and then proceeding into the intersection she was struck by an automobile owned jointly by defendant and his father, which was being operated at excessive speed and which failed to yield the right-of-way; that defendant and his father were joint owners of the vehicle and defendant was an authorized agent of his father operating the car within scope of the agency at the time, and defendant was a known careless and reckless driver. The second amended petition set forth the various charges of negligence relied upon as establishing proximate cause of the accident and injury; specifically charged defendant with negligence in failing to yield the right-of-way in violation of city ordinances which adopt the rules of the road and statutes of this State; and, particularly Ordinance No. 149, Sec. 6, defining right-of-way and requiring the driver of a vehicle approaching an intersection to yield the right-of-way to a vehicle approaching from the right; failure to operate his vehicle in a careful and prudent speed with due regard for all existing conditions; failure to yield right-of-way to plaintiff in view of her already having entered the intersection; failure to make any effort to slow his speed and turn his vehicle in order to avoid collision.

Defendants answered denying there had been failure to yield right-of-way and specifically charged plaintiff with fault in this respect, and also denied defendant's agency for the father or that defendant was a known reckless driver. Further, if any duty existed to yield right-of-way under the circumstances defendant had violated no city ordinance as the ordinance relied upon by plaintiff was not applicable; the controlling ordinance was Ordinance No. 178, which pertained to traffic on Commerce Street (and other streets not material herein), made same a through street and repealed all ordinances or parts thereof in conflict therewith. The answer further asserted the defenses of sudden emergency, negligence and contributory negligence of plaintiff, and unavoidable accident. Defendants also charged plaintiff with negligence by driving into the intersection and causing the collision, same proximately having been caused by her negligence in failing to yield right-of-way in compliance with Ordinance No. 178 which defendants pleaded in full, by virtue of which defendant had the right-of-way. By cross-petition defendants asserted the accident was the direct and proximate result of plaintiff's negligence and failure to yield right-of-way, although under legal duty to yield under requirements of Ordinance No. 178, and prayed recovery of damages in the amount required for repair of their automobile.

Plaintiff's reply denied all matters asserted in the answer contrary to the petition, and specifically denied applicability and validity of the ordinance (No. 178) relied upon by defendants. The answer to defendants' cross-petition likewise denied all matters therein alleged.

At opening of the trial, defendants moved the court to rule as to which ordinance was applicable, stating that defendants could not safely proceed to trial until the court resolved this issue. Over defendants' objection the trial court overruled defendants' motion to strike the case from the trial docket, and reserved ruling as to which particular ordinance should be applied until the evidence was closed.

The evidence showed the weather was "misty" and the streets wet at the time of the accident. Plaintiff testified that, although there were no stop signs at the intersection, she stopped completely and looked in both directions for approaching traffic, as was her custom. Observing none, she shifted to low gear and pulled slowly into the intersection, and when at about the center line of the intersection she saw defendant's car coming and was struck at about the left rear door of her car. Plaintiff estimated the speed of defendant's car at 35 miles per hour. The impact caved in the left rear portion of plaintiff's car, which was "knocked" toward the ditch at the south side of the intersection with the front pointing back east. The city ordinance relied upon by plaintiff fixed maximum speed on Commerce Street at 25 miles per hour, and provided that vehicles approaching an intersection were required to yield the right-of-way to vehicles approaching on the right.

There was other evidence in plaintiff's behalf as to the nature and amount of damage to her car, injuries to her person, medical and hospital expenses and treatment, the nature and extent of her business affairs and loss of earnings resulting from injury and disability incurred. Plaintiff also introduced evidence to show defendant had been involved in a prior accident while driving this car, and shortly before this accident had been arrested for a speeding violation.

The defendants introduced the testimony of the police chief (Brookshire) of Commerce, who testified he was called to investigate the accident and found the Smith car in the north traffic lane of Commerce Street facing west; plaintiff's car was across the center line and off the pavement; plaintiff told him she stopped at the north side of the intersection, looked both ways and saw no cars and pulled onto the highway and saw the Smith car approaching and "speeded up" to get across the intersection.

On cross-examination plaintiff's counsel elicited testimony that there were no stop signs, yield or warning signs at this intersection; the point of impact had to be on the north side of the center line of Commerce Street because defendant's vehicle still was in his line of traffic; on a blackboard drawing the witness fixed a point practically to the north curb line of the street as the point of impact, but could not fix this by measurement of distance because without information as to how far Smith's car moved after impact; the witness could not recall having told plaintiff's attorney the point of impact was approximately one and a half feet north of the center line.

■ Counsel then offered a freehand drawing made by one of plaintiff's attorneys when discussing the case with the witness subsequent to the accident, and which had been initialed by the witness. This drawing, plaintiff's Exhibit 7, then was offered in evidence for purposes of impeachment of the witness. After first sustaining objection to admission of the exhibit in evidence, the trial court changed his ruling and admitted the exhibit, on the ground the witness had identified the drawing by initialing same, in effect establishing the truth and correctness of the matters shown thereon. We are of the opinion the trial court's action was incorrect and necessitates reversal of the case.

■ Although to some extent related, two valid reasons support our conclusion. First, the rule consistently applied in this State is that the report of the officer investigating a particular accident is not admissible in evidence. Hadley v. Ross, 195 Okl. 89, 154 P.2d 939; Bison Transports, Inc. v. Fraley, 205 Okl. 520, 238 P.2d 835; Maben v. Lee, Okl., 260 P.2d 1064; Kelso v. In-

dependent Tank Co., Okl., 348 P.2d 855. Thus any report of this accident made by the police chief, either voluntary or made pursuant to official duty, would have been inadmissible. The questioned exhibit, which was a freehand diagram with written comments and conclusions as to matters involved in the accident, introduced in evidence was not made by the officer but was prepared by one of the attorneys some time after the accident, and only initialed by the witness. To hold such evidence properly could be admitted would create an anomalous situation. The police officer's official investigation report would be inadmissible, while an ex parte report or diagram of the accident produced by a third party and acknowledged by the officer as correctly depicting the scene would be admissible for impeachment purposes. In this situation the very thing could be accomplished under guise of impeachment that could not be done otherwise. There would be supplied for the jury's consideration the very type of evidence which we heretofore have held supports reversible error when admitted.

The second reason for holding there was reversible error in admitting the plaintiff's exhibit into evidence is stated in Harris Irby Cotton Co. v. Duncan, 57 Okl. 761, 157 P. 746, as follows:

"The test as to whether a particular contradictory statement of a witness is admissible for the purpose of impeachment is, Could the contradictory statement be introduced for any purpose in the trial independent of the contradiction? If it could be so introduced, then it is admissible for the purpose of impeaching the witness; otherwise it would be upon a collateral issue and not admissible."

Also see Hearn v. Blakeney & Ambrister, 146 Okl. 122, 293 P. 225; Kelso v. Independent Tank Co., supra.

Inasmuch as the case must be tried again, we avoid consideration of other contentions urged on appeal.

Reversed and remanded with directions to grant defendant a new trial.

HALLEY, C. J., and DAVISON, BLACKBIRD and HODGES, JJ., concur.

JACKSON, V. C. J., and WILLIAMS, J., dissent.

IRWIN, J., concurs in result.