**Paul S. MONTGOMERY, Plaintiff in Error,**

**v.**

**Carl Kenneth NANCE, Defendant in Error.**

**No. 41476.**

Supreme Court of Oklahoma.

Feb. 21, 1967.

Rehearing Denied March 28, 1967.

James L. Burton, Oklahoma City, for plaintiff in error.

Rinehart & Morrison, Oklahoma City, for defendant in error.

LAVENDER, Justice:

On May 14, 1963, the plaintiff in error was driving his automobile south on Highway 77 in Oklahoma County when it was involved in an accident resulting in alleged personal injuries to plaintiff and damage to his car. Plaintiff alleged, among other things, that the accident was the result of negligence on the part of the defendant in the operation of the vehicle of the latter, which resulted in plaintiff being "forced" off the road into the ditch where plaintiff's vehicle overturned. The defendant filed his answer in which he denied he was negligent but alleged contributory negligence on the part of the plaintiff.

The case was submitted to a jury which returned a verdict favorable to the defendant. The plaintiff filed his motion for new trial, which was overruled by the trial court. Plaintiff brings this appeal from the said

action of the trial court, alleging as plaintiff's sole ground for reversal thereof the following:

"The sole issue involved in this appeal is whether the trial court committed prejudicial error of law by not requiring the defendant to 'take his answer' to collateral questions asked plaintiff on cross-examination, but rather, allowed defendant to call his own witness to contradict the statements made and impeach the character of the plaintiff."

By way of answering this contention of the plaintiff, the defendant asserts, in effect, that because plaintiff attempted to "bolster up his case, and increase the verdict," by showing he "was of good moral character and kind and loving to his mother," that the matters mentioned became "issues" in the cause so as to authorize the reception of rebuttal evidence. To state it somewhat differently, and perhaps a bit more succinctly, defendant claims the plaintiff "opened" up the inquiry as to what would otherwise be collateral issues, and that plaintiff should not now be heard to complain of the admission of evidence upon such matters.

■ We think that the rule of evidence generally followed in most of the jurisdictions, including Oklahoma, is as set forth in Tarter v. State of Oklahoma, Okl.Cr., 359 P.2d 596, as follows:

"A witness may not be impeached by showing contradictory or inconsistent statements by him in respect of collateral, irrelevant or immaterial matter, and where on cross-examination witness has denied making a statement as to a collateral, irrelevant and immaterial matter, cross-examiner is bound by answer and may not introduce evidence by way of rebuttal to prove that witness did make statement which he denied making."

■ For earlier but similar expressions of view by this court see Missouri, O. & G. Ry. Co. v. Adams, 52 Okl. 557, 153 P.

200, and Weber v. Rusch, 117 Okl. 4, 245 P. 46. In applying the rule, we held in Weber v. Rusch, supra, " * * * impeaching testimony cannot be used where such testimony would not be admissible if offered in evidence independent of the impeachment, * * * " See also Harriss-Irby Cotton Co. v. Duncan, 57 Okl. 761, 157 P. 746; Smith v. Wilkins, Okl., 403 P.2d 485, and 98 C.J.S. Witnesses § 611.

■ Under the cited rules then it is clear that if the matters which were the subject of inquiry were in fact collateral matters then the defendant must, indeed, "take the answers" of the witness elicited upon cross-examination and, although unrestricted in his right to further cross-examine, may not resort to the testimony of other witnesses to prove, or disprove, the collateral matters. To decide the defendant's contention that plaintiff "opened" up the inquiry on these otherwise immaterial matters and thus permitted defendant to rebut them, we turn now to a consideration of the evidence as presented to this court by a transcript of the testimony.

There was considerable testimony concerning dogs and how the plaintiff felt toward them, particularly the testimony of one Officer J., testifying for the defendant. The testimony of this officer on the otherwise collateral subject matter of dogs was made admissible, defendant contends, by plaintiff's reference to them in his testimony. The direct testimony of plaintiff on this subject, as far as the record before us, reveals the following:

"Q. (By plaintiff's counsel) Do you recall hitting a dog when you drove by that house? (prior to the accident)

"A. I did not hit a dog, to my knowledge.

"Q. You did not see a dog?

"A. I did not see a dog."

then, later * * *

"**Q.** Did you have any conversation with the defendant there in the presence of the trooper?

"**A.** Why, I was sitting in the right front seat of the patrol car. The trooper was sitting behind the steering wheel. That man there was sitting behind the trooper who was behind the steering wheel. I turned around and asked him, and these are my exact words—(objection)— 'why did you run me off the road,' and his exact reply was, 'Because you ran over my dog.' My reply was, 'You mean you tried to kill me over a dog?' Then the trooper said, 'Shut up and don't start to argue,' and I said nothing else."

On cross-examination the plaintiff denied that he had said he would kill every dog that came in his yard. To rebut this denial by the plaintiff, the defendant was permitted to introduce the evidence of one J., a police officer, who testified in part as follows:

"**Q.** (Defendant's counsel on direct) Did he (plaintiff) at any time state to you this, or this in substance, that he would shoot any dogs that came into his yard?

"**A.** Yes, sir."

■ We feel that the foregoing evidence should not have been admitted. We do not agree that the record supports defendant's claim that the plaintiff "opened up" the inquiry concerning dogs so that the quoted evidence became admissible.

Considering the strong evidence of negligence on the part of defendant in the operation of his automobile which resulted in injuries and damages to plaintiff, we cannot believe but that the admission of the incompetent evidence was prejudicial to the plaintiff.

■ The defendant's witness J. was further permitted to testify as follows:

"**Q.** If the court will bear with me just a moment; I will ask you if he told you this, or this in substance, that he had been a mental patient while in the service, and that he was discharged by reason thereof?

"**A.** He did not actually say he had been a mental patient. We received that information from someone else, but he did say * * * (objection)"

Defendant argues that the foregoing was admissible because plaintiff on direct examination had testified that he had become nervous as a result of the accident. We do not agree that such "evidence" thereby became admissible, and we believe that the reception of this testimony was also error.

■ Witness J., further testifying concerning an occasion when he came to the plaintiff's residence on an "official visit" in 1963, testified as follows: (in response to questions by defendant's counsel)

"**Q.** I will ask you if on that occasion he (the plaintiff) was accused in your presence of any violence towards his mother? (objection)

"**Q.** Will you tell us what was said and who said it?

"**A.** Mr. Montgomery's mother told us that he had struck her about the body, put his hand over her mouth making it hard for her to breathe and also applied pressure to the back of her neck until she cried, and that she was afraid of him and she would like him removed from the house."

And, again, concerning plaintiff's conduct towards his mother:

"**A.** She said she could not call her friends, or if she needed help, she couldn't call because he had removed the mouthpiece from the 'phone. She told us where it was. We found that it had been removed and we found it in Mr. Montgomery's room."

Defendant alleges the above evidence concerning plaintiff's conduct toward and treatment of his mother became admissible because on direct examination plaintiff had testified as follows:

"Q. Prior to this time, how did you spend your time?

"A. Attending the Westlawn School of Yacht design. I had completed the basic patterns in supersonic airplanes and I was working on a development of electrical equipment in addition to these. I was remodeling a house for my mother that I had just purchased for her in the Village.

"Q. You say for your mother?

\* \* \* \* \* \*

"Q. Will you tell the jury why you stay with your mother?

"A. Well, she has Parkinson's disease. She could not care for herself. I was taking care of her."

Plaintiff, on the other hand, takes the position that the above evidence was explanatory of the lack of a claim by him for loss of earnings during his incapacity. It is well to note also that the testimony of witness J. concerning plaintiff's alleged conduct toward his mother did not rebut the above evidence of plaintiff but was rather an attack upon the character of plaintiff which, of course, was not an issue in this lawsuit. We have found no case and none has been cited which would authorize the reception of the above quoted testimony of witness J. upon the wholly collateral issues concerning plaintiff's conduct toward dogs; whether plaintiff was ever a victim of mental disease or how he treated his mother.

We believe that the reception of the above incompetent evidence was prejudicial to the rights of the plaintiff and entitles him to a new trial. The cause is therefore reversed and remanded for a new trial.

All the Justices concur.